JAMISON v. INDEPENDENT SCHOOL DIST. OF ROCK RAPIDS, LYON COUNTY, IOWA.

(Circuit Court, N. D. Iowa, W. D. December 1, 1898.)

1. MUNICIPAL BONDS—VALIDITY—LIMIT OF INDEBTEDNESS.

Bonds issued by a school district which was indebted beyond the constitutional limit may be enforced where they were issued and used for the purpose of funding a valid outstanding judgment against the district.

2. SAME—ILLEGALITY IN INCEPTION—BONA FIDE PURCHASER—BURDEN OF PROOF.

A school district issued negotiable bonds, which it exchanged for a bond previously issued, when it was indebted in excess of the constitutional limit, and which was also fraudulently obtained from the district by the original holder, without consideration. It did not appear that the person with whom the exchange was made was a holder for value of the old bond. *Held*, that a transferee of the new bonds could not recover thereon without proof that he was a bona fide purchaser for value and before maturity.

In the above case, the parties plaintiff and defendant, by a written stipulation, duly filed, waived a jury trial, and agreed that the case should be tried by the court upon the facts and the law; and, from the evidence submitted, the court finds the facts to be as follows:

(1) When this action was brought, the plaintiff, W. H. Jamison, was a citizen of the state of California, and the defendant, the independent school district of Rock Rapids, was a municipal corporation, created under the laws of the state of Iowa, being one of the school districts of Lyon county, Iowa.

(2) The county of Lyon is one of the corporate counties of the state of Iowa, and, prior to the year 1872, was attached to Woodbury county, Iowa, for judicial and revenue purposes. It was organized as a separate county, about January 1, 1872.

(3) That in 1871 the following described territory, in said Lyon county, Iowa, was organized into the township of Rock, the same constituting the school district township of Rock, to wit, all of the territory of said county comprised in township 100, ranges 43, 44, 45, and 46, and all of the north half of township 99, ranges 43, 44, 45, and 46; and that such district township of Rock existed as such territory without change of boundaries until the fall of 1872, when the said territory was organized into the independent school district of Rock Rapids, the independent school district of Riverside, and the district township of Grant.

(4) That the valuation of the taxable property within said district township of Rock, as shown by the state and county tax lists, was as follows: For the year 1871, $150,571; for the year 1872, $149,511.12.

(5) That the first tax list of the independent school district of Rock Rapids was in the year 1873, and that the valuation of the taxable property within said independent school district of Rock Rapids, as shown by the state and county tax lists from 1873 to 1881, inclusive, was as follows: For the year 1873, $90,188.19; for the year 1874, $88,544.35; for the year 1875, $87,517.13; for the year 1876, $86,604.66; for the year 1877, $77,886.59; for the year 1878, $52,441.82; for the year 1879, $84,320.51; for the year 1880, $94,049; for the year 1881, $99,032. For the year 1879 the exemption allowed under the tree-culture acts of the state of Iowa amounted to $5,329.80; for the year 1880, to $10,334; and for the year 1881, to $12,872. In the totals given for the valuation of the taxable property of the district for these years, the amount of these deductions has not been subtracted.

(6) This action is based upon four negotiable bonds, with interest coupons,— two numbered 7 and 8, being called "judgment bonds," dated June 14, 1881, for $500 each, payable in 10 years from date, the coupons from Nos. 11 to 20, inclusive, on both bonds, being unpaid; and two bonds, also numbered 7 and 8, for $500 each, dated June 14, 1881, and payable in 10 years from date, with coupons from 11 to 20, inclusive, on each bond, being unpaid,—all of the

said bonds and coupons being duly signed by the president and secretary of the defendant district, and the same being the property of the plaintiff.

(7) On the 14th day of June, 1881, there appeared of record the following unsatisfied judgments against the defendant district:

| Name. | Date. | Amount. | Costs. |
|---|---|---|---|
| O. A. Cheney | Feb. 18, 1875 | $    90 00 | $    7 25 |
| T. E. Converse | Sept. 25, 1874 | 62 50 | 7 85 |
| Eureka Mfg. Co | Sept. 21, 1876 | 51 85 | |
| Joy & Wright | Sept. 21, 1876 | 312 04 | |
| J. K. P. Thompson | May 14, 1878 | 243 68 | 4 45 |
| Joy & Wright | Feb. 18, 1879 | 529 94 | |
| Gammon & Deering | Sept. 30, 1879 | 280 00 | 4 85 |
| J. W. Taylor | Sept. 30, 1879 | 192 66 | 4 75 |
| J. K. P. Thompson | Dec.   9, 1879 | 245 75 | 3 75 |
| Aultman, Miller & Co | May 19, 1880 | 206 00 | 4 65 |
| J. A. Perry | May 19, 1880 | 497 41 | 4 85 |
| | | $2,711 23 | $44 40 |

(8) On the 11th day of October, 1872, two judgments were rendered in the circuit court of Lyon county, Iowa, against the district township of Rock,— one in favor of George W. Felt & Co., for the sum of $946.87 and costs, $2.50; and one in favor of John A. Schmidt, for the sum of $4,525.70 and costs, of $2.50.

Under date of February 11, 1880, an entry of satisfaction is made on the record of the Schmidt judgment, as follows:

"Received of the clerk of the circuit court of Lyon county, Iowa, for the independent district of Rock Rapids, on this judgment, Feb. 11, 1880, payment in full for one-third of said judgment, the amount received for said one-third being two thousand one hundred and seventy-five dollars.
                                   "John A..Schmidt,
                                       "By O. C. Tredway, His Atty."

On the record of the judgment in favor of George W. Felt & Co., the following entries appear: "Apl. 29, 1876, due $58.90;  May 29, 1876, order issued for $59.40, delivered to S. C. Hyde.  Bonded one bond $500.00;  2 bonds, 200 each.   See record circuit court; see page 10 (margin)."

(9) On November 7, 1872, the voters of the defendant district voted in favor of the issuance of $8,000 of bonds by the district for the purpose of erecting a school house, and, in pursuance of this vote, the board of directors adopted a resolution authorizing the issuance of the bonds; and the same were issued and placed in the hands of the treasurer of the district, D. C. Whitehead, with whom a contract for building a schoolhouse was entered into, but it was not fulfilled by Whitehead; and on January 6, 1875, a resolution was adopted by the board of directors reciting the issuance of the bonds, the appropriation thereof by Whitehead, and a proposition made by him to build a graded school building for the district, in consideration of the receipt by him of the bonds and the proceeds thereof, the board accepting the proposition thus made.

(10) The evidence shows that prior to June 14, 1881, the date of the bonds sued on, the defendant district had become indebted on warrants and bonds in a sum largely in excess of 5 per cent. upon the value of the taxable property of the district, as the same existed in the years 1872 to 1881, both inclusive; and the district was so indebted when the bonds sued on were issued and disposed of, but the accounts and books of the defendant district have been so badly kept that it is practically impossible to state just when or for what consideration the warrants and bonds were in fact issued.

(11) The two bonds, of $500 each, numbered 7 and 8, declared upon in the first count of the petition, were issued for the purpose of funding a judgment then outstanding against the defendant district, and were in fact used for that purpose.

(12) The two bonds, of $500 each, numbered 7 and 8, and declared upon in the second count of the petition, were issued and used for the purpose of

funding bond No. 5 of the issue of November 7, 1872, for $1,000, which on June 14, 1881, was owned by one D. M. Hathaway, a resident of Illinois.

A. Van Wagenen and Joy & Joy, for plaintiff.

J. M. Parsons and E. C. Roach, for defendant.

SHIRAS, District Judge. Under the facts of this case, there seems to be no escape from the conclusion that the bonds issued under the circumstances set forth in the ninth finding of facts were, when issued, null and void. The amount of this issue, being $8,000, exceeded 5 per cent. upon the total valuation of the taxable property in the district township of Rock, out of which the defendant district was carved, in the fall of 1872, and therefore the amount of the bonds, when issued, clearly exceeded 5 per cent. upon the valuation of the taxable property in the defendant district. Furthermore, it appears that the bonds, when issued, were delivered to D. C. Whitehead, who was the treasurer of the district, who disposed of the same, and appropriated the proceeds to his own use, and the district received but little benefit or consideration therefrom. The evidence further shows that on the 14th day of June, 1881, the date of the bonds sued on, the defendant district was indebted in a sum in excess of the constitutional limit, and therefore could not lawfully create a further indebtedness. Consequently, the bonds in suit must be held to be invalid and void, unless it is shown that they represent a pre-existing enforceable indebtedness. So far as the two bonds, called "judgment bonds," are concerned, the evidence, though not entirely satisfactory, justifies the conclusion that they were in fact issued to bond an outstanding judgment against the district; and, having been issued and used for that purpose, the bonds were valid and enforceable in the hands of the original holder, and are equally valid in the hands of the present plaintiff. With respect to the two bonds called "refunding bonds," the evidence shows that they were issued to refund bond No. 5 of the issue of November, 1872, which bond was invalid under the constitutional restriction, and was without consideration and fraudulent in the hands of the original holder. The evidence shows that on June 14, 1881, this $1,000 bond was owned by D. M. Hathaway, who exchanged the same for the two bonds in suit. The evidence fails to show that Hathaway paid value for the $1,000 bond, or that the plaintiff paid value for the refunding bonds issued in lieu thereof. It is not averred in the petition that the plaintiff paid value therefor, nor is there any evidence from which it can be found, as a matter of fact, that the plaintiff became the owner of the bonds before maturity or for value.

The case, so far as it rests upon these bonds, comes within the rule laid down by the supreme court in Smith v. Sac Co., 11 Wall. 139, that, if there be fraud or illegality in the inception of negotiable paper, proof thereof in a suit thereon casts upon the plaintiff the burden of showing that he is a holder for value; and, in the absence of such proof, the holder will be deemed to be merely a transferee, against whom the same defenses may be made that would be available against the original holder of the paper. I therefore hold that there can be no recovery on the so-called "funding bonds," but that the plaintiff is entitled to recover the sum due on the judgment bonds,

and·the coupons thereto belonging, being the sum of $1,902.30. In this computation, the coupons becoming due before April 7, 1888, are not included, as the same are barred by the statute of limitations. Judgment will therefore be entered in favor of plaintiff for the sum of $1,902.30, each party to pay their own costs.